HORTON ET AL. *v.* ROBERT.

APPEAL from the District Court of Mayagüez.

No. 19.—Decided June 28, 1906.

COMPLAINT—VERIFICATION—ALLEGATIONS—ANSWER—SPECIFIC DENIAL.—Where a complaint is verified the defendant must specifically deny each and every allegation, inasmuch as in the absence of such specific denial the answer is insufficient.

USURIOUS CONTRACTS—MORTGAGE—NULLITY.—In order that a mortgage or a contract may be declared to be usurious, it is not essential that the illegal rate of interest appear in the document or instrument.

ID.—CONSIDERATION—DETERMINATION THEREOF.—Although the consideration may appear in a contract, the truth of the facts stated will not be presumed to be conclusive, and the court is empowered to ascertain what the real consideration is from the evidence introduced.

ID.—RATE OF INTEREST IN EXCESS OF 12 PER CENT PER ANNUM.—If in a contract a rate of interest in excess of 12 per cent per annum is received or accepted, or agreed to be received or accepted, the contract is null and void.

ID.—EFFECTS OF USURIOUS CONTRACTS—CANCELLATION OF. THE OBLIGATION.—
Usurious contracts are null and void, and the court of competent jurisdiction has the power to prevent the collection thereof, or any proceeding instituted for that purpose, and may require the cancellation of the original obligation, it not being necessary to demand payment of the principal sum or the interest, or any part thereof, as a condition for the granting of the remedy.

ID.—THIRD PARTIES.—Where a statute relating to usury contains a definitive provision, like the usury law of Porto Rico, that all usurious contracts are null and void, the nullity thereof affects all persons in general, even those who have taken no part in the contract.

PAWNBROKER—LOANS UPON PLEDGES.—Loans upon·pledges are made only upon personal property, and the lender generally loans his money in small amounts on articles of value which are delivered to him as a pledge.

ID.—LOANS ON REAL PROPERTY.—The business of a pawnbroker has nothing to do with real property, and under no circumstances could a mortgage on real property be classified as a loan upon a pawn or a pledge.

CONTRACTS—LOANS.—The exception made by the provisions of section 223 of the Political Code permitting 4 per cent monthly to be collected as interest upon. pledges or upon loans refers to the loan, and not to the person making the loan.

ALLEGATION—JUDGMENT ON THE PLEADINGS.—In a case where the answer to the complaint does not deny the essential allegations therein, they will be deemed to be true and judgment may be given on the pleadings.

APPLICATION FOR ORDER—MOTION.—Inasmuch as every application for an order is a motion, judgment may be rendered on the pleadings on the motion of the plaintiff where the essential allegations in a verified complaint are not specifically denied in the answer and no new matter constituting a defense is alleged.

ID.—Motions for judgment on the pleadings is within the discretion of the court, and the appellate court will not reverse a decision overruling such a motion in the absence of an abuse of such discretion by the trial court.

APPEALS—ERRORS OF PROCEDURE NOT PREJUDICIAL TO THE RIGHTS OF THE PARTIES.—Errors of trial courts not prejudicial to the substantial rights of the parties will not be considered by the appellate court.

EVIDENCE—APPEARANCE OF WITNESSES.—A witness residing beyond the district of the·court cannot be compelled to appear before such court, except where the distance between the place of residence of such witness and the place of holding court is less than 30 miles.

TRIAL—CONTINUANCE.—A trial court may grant a motion, supported by affidavit, for sufficient time to file a motion in writing for a continuance of the trial, but if such motion is based upon the necessity of compelling the attendance of a witness, not subpoenaed in due time, it is not error to deny the continuance, inasmuch as such denial is warranted by reason of the failure of the applicant to exercise due diligence in the matter.

EVIDENCE—RIGHT OF WITNESSES TO CONSULT NOTES WHILE TESTIFYING.—A witness has a right to consult notes or a memorandum prepared by himself for the purpose of refreshing his memory. The court has a right to examine and inspect such memorandum, and if the same has been improperly prepared or

has not been prepared by the witness, the same should be excluded and cannot be used for the purpose of refreshing his memory.

NEW TRIALS—MOTION.—A motion for a new trial is made to the court which rendered judgment, for the purpose of affording that court an opportunity, on mature reflection, to correct any errors which might have been made in the haste of the trial.

ID.—APPEAL.—An appeal from a final judgment does not deprive the trial court of jurisdiction to hear and determine a duly presented motion for a new trial; if the motion is granted the appeal is of no effect, but if it is overruled, the transcript is prepared and forwarded to the appellate court for review.

ID.—When the Supreme Court reverses a judgment and there is no necessity of ascertaining any matters of fact and there are no damages to be assessed, it should not remand the case for a new trial, but proceed to render such judgment as the court below should have rendered therein.

The facts are stated in the opinion.

*Mr. Ulman* for appellant.

*Messrs. Acuña and Méndez* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This suit was instituted in the District Court of Mayagüez by Benito Texidor and his wife, Elvira Pulido, and by Benjamin J. Horton and Frederick L. Cornwell against Adolfo Robert Strike, having for its object the cancellation of two mortgages, copies of which are attached to the complaint, on the ground that the said mortgages are usurious and unlawful, having been executed in order to secure loans made at a usurious rate of interest—that is to say, a rate higher than 12 per cent per annum, which is the limit allowed by the laws of Porto Rico.

The complaint was filed on the 16th of June, 1905, and the answer was filed on the next day. To this answer plaintiffs interposed a demurrer on the 19th of the same month, and on the 31st of July the defendant filed an amended answer, to which amended answer plaintiffs interposed a demurrer on the 9th of August following, and on the 12th of August presented an amendment to the complaint, correcting two clerical errors; and on the same day defendant filed an amendment to his amended answer, striking out part of certain paragraphs of the said answer. On the pleadings thus amended the parties went to trial.

The complaint substantially alleges that two of the plaintiffs, Texidor and his wife, applied to the defendant, on the 28th of May, 1902, for a loan of $400, for the term of two years; and that the defendant agreed to lend that amount on interest at the rate of 2½ per cent per month, provided the borrowers would execute a mortgage for the amount of the principal and interest for two years included, amounting to $640, payable at the rate of $10 each month, up to and including the month of April, 1904, the balance of $410 to be paid on the 28th of May, 1904, with interest on the amount remaining unpaid at the rate of 12 per cent per annum, in case of delay. It is further alleged that the mortgage was duly executed in accordance with this agreement, and that the only consideration for the execution of the said mortgage was the $400 borrowed, and that this was all the money the plaintiffs received on account of the same; and further that $12 was paid by plaintiffs to Emilio Cuevas, agent of the defendant, as a commission for making the loan, and that the plaintiffs, Texidor and wife, had paid to the defendant from time to time sums amounting in the aggregate to $120 on account of said mortgage. And plaintiffs further alleged in their complaint that Texidor and wife, on the 27th of April, 1903, sought from the defendant a second loan of $400 for a term of three years, and that defendant agreed to lend them the money on interest at the rate of 2½ per cent per month, provided they would execute a mortgage for the principal amount and interest included, deducting $60 in advance for the interest, at the time of making this second loan, reducing the sum of $400 borrowed to $340, and that the second mortgage was accordingly made for $700, also containing a provision that if the money was not paid when the same became due, it should thereafter bear interest at the rate of 12 per cent per annum. That this was the only consideration for the making of the said second mortgage and all the money which was received on account of same. The complaint further alleges that a portion of the mortgaged lands were

afterwards sold by Texidor to Horton & Cornwell, for a valuable consideration.

The amended answer, filed by the defendant, which is the pleading relied on by him, in the first six paragraphs thereof merely alleges the execution of the mortgages, and that in the mortgages as executed the plaintiffs, Texidor and wife, acknowledged the receipt of the amounts therein set out. Paragraphs 7 and 13 of the said amended answer allege that defendant does not remember to have received any sum from the plaintiffs except the sum of $60 on account of the first mortgage. Paragraph 8 thereof alleges that no other interest than 12 per cent per annum was agreed upon, nor does it otherwise appear on the books of the defendant; and it further sets up as new matter, that at the time mortgages were executed the defendant was a duly authorized and licensed pawnbroker. Paragraphs 10 and 12 thereof deny that the contract is usurious and illegal, contending that its legality appears from the copies of the mortgages themselves. Paragraph 14 thereof denies that upon the face of the mortgages there appears any rate of interest higher than 12 per cent per annum, the rate allowed by law. Paragraph 15 of said answer specifically denies that the defendant intended to sell the mortgage credits referred to in the complaint, or to enforce the payment of the same judicially, and asks that the prayer for an injunction be disregarded on this account. In paragraph 16 thereof the defendant contends that only legal proof of the contract entered into by said mortgage deeds is what is expressly contained in them, as to the delivery of the money, as well as to the character of the loan and of the mortgage, and the rate of interest agreed upon, and the other conditions stipulated in said deeds. Paragraphs 9 and 11 of said answer have been, with leave of the court, stricken out of the same by the defendant himself.

It is believed that the above is a fair summary of the material allegations made in the complaint as amended and in the amended answer. Both the complaint and the amended

answer were duly sworn to as provided by statute.    (Code of
Civil Procedure, sec. 118.)

To the amended answer the plaintiffs demurred for various
reasons set out at length in twenty paragraphs, which may be
summarized in the statements that the said answer does not
state facts sufficient to constitute a defense to the action;
that the same is ambiguous, unintelligible, argumentative and
uncertain, and merely states conclusions of law, neither ad-
mitting nor denying the facts alleged in the complaint, which
are claimed to show the usury, and on which facts the con-
tracts were alleged to have been based, rendering the mort-
gages usurious and therefore void.

The trial court on the 24th of August, ''after hearing the
evidence introduced and the arguments of the parties, re-
served its decision until the 16th of October, and on that day
declared the law to be against the plaintiffs, and therefore
overruled the demurrer.''

It may be remarked in passing that it is a rare and un-
usual proceeding to hear evidence introduced for the purpose
of deciding a demurrer, and we presume these recitals in the
aforesaid order to have been a clerical error.

I. Plaintiffs make the overruling of their demurrer to
defendant's amended answer their first assignment of error.

The authorities cited by both sides on this point are
merely sections 110, 122 and 142 of the Code of Civil Pro-
cedure.   The first section referred to, No. 110, prescribes
what an answer shall contain, requiring it to set forth a
general or specific denial of the material allegations of the
complaint which are controverted by the defendant, and also
a statement of any new matter constituting a defense or
counter claim;   further providing that if the complaint be
verified, the denial of each allegation controverted must be
specific, and made positively, or according to the information
and belief of the defendant.

Section 122 of the same Code requires the court in the

construction placed upon a pleading, for the purpose of determining its effect, to interpret the allegations thereof liberally with a view to substantial justice between the parties.

And section 142 requires the court to disregard any error or defect in the pleadings which does not affect the substantial rights of the parties, and prohibits any judgment from being reversed or affected by reason of such error or defect.

Tried by these rules, it seems to us clear that the amended answer is defective in failing to make a specific denial of the fact, which was sworn to in the complaint, that the mortgages were based on usurious contracts. (Code of Civil Procedure, sec. 110.) The defendant seems to have an idea, and his whole pleading is based thereon, that in order for a mortgage to be declared usurious the usury must appear on the face of the document. This proposition would render the statute in regard to usury a dead letter, and directly conflict with section 25 of the Porto Rican Law of Evidence. The respondent also seems to presume that the consideration of a written contract cannot be inquired into by a court in testing its validity, but must be taken to be correctly stated in the contract itself. This presumption is contrary to section 101, paragraph 2, of the Porto Rican Law of Evidence and to all the decisions of the American courts. No matter what consideration is expressed in a written contract the truth of the recitals is not conclusively presumed, but the true consideration can always be inquired into by the court, and evidence introduced and received to show what it was. See also the paragraph (36) of section 102 of the Porto Rican Law of Evidence. And besides, our statute in regard to usury does not limit its denunciation to such contracts as are made for and in consideration of a usurious rate of interest; but it is enacted in the law that if interest is received or accepted on a contract at a rate greater than 12 per cent per annum, this fact renders the contract void. Section 359 of the Revised Statutes, which is section 1 of the Act of the 1st of March,

1903, to fix a legal rate of interest on all obligations, as subsequently amended, reads as follows:

"That in the absence of an agreement in writing entered into and executed at the time, the rate of interest upon the loan or forbearance of money or goods, or upon any variety of obligation or contract or upon unpaid judgments, shall be at the rate of $6 annually, on each $100 or upon its equivalent in value, and at the same rate for a greater or less sum or for a longer or shorter period; *Provided, however,* That no rate of interest shall be fixed by special agreement in excess of $12 a year on each $100 or upon its equivalent of value. Within the limit here defined it shall be lawful to discount bills and notes and other similar obligations."

The error in the enrolment of the original statute was corrected by the Act of the 12th of March, 1903, changing the legal rate of interest to 6 per cent instead of 12 per cent, and adding the last sentence in the statute. (See Laws of 1903, p. 109.)

Section 362 of the Revised Statutes reads as follows:

"No person shall, except as authorized by section 3 of this act, demand or receive directly or indirectly any money or goods, or by way of commission or discount, or in any other way, any greater rate of interest for the loan or forbearance of any money, than the rate provided herein.

"Any contract whereon or whereby directly or indirectly there is reserved, or accepted, or secured or agreed to be reserved, accepted or secured any greater rate of interest than is allowed by this act, is utterly void for all purposes; and a court of competent jurisdiction in a proper action may enjoin either the collection thereof, or any proceeding to enforce such contract, and may direct the original of such contract to be made void and the payment of the principal sum, or interest, or any part thereof shall not be required as a condition to granting the remedies last mentioned."

The exception referred to as occurring in section 3 of the act exempts loans made by a licensed pawnbroker from the provisions of the act. This feature of the statute may as well be discussed here as later. The only new matter

alleged by the defendant in his answer presents a question of law, not of fact, and that is that the defendant being a licensed pawnbroker had a right to charge interest at a greater rate than 12 per cent per annum on a mortgage on real estate. A pawnbroker, according to section 223 of the Political Code is allowed to charge 4 per cent per month on loans made by him on goods pawned. A pawn is made only of personal property, and pawnbrokers usually lend money in small amounts on articles of value which are delivered to them as pledges or pawns at the time. The business of a pawnbroker, as such, has no relation whatever to real estate, and a mortgage on real estate is not in any sense a pawn or a pledge. (See 2 Bouvier's Dictionary, p. 634.) A pawnbroker has no more right to charge a usurious rate of interest on a loan made on a mortgage binding real estate, than any other person has to do the same thing. It is the pawnbroker's loan— not the pawnbroker himself—that is exempted from the force of the law.

The statute of Porto Rico on the subject of usury, quoted at length herein, is more strict and forcible than many statutes of the kind. It provides that usurious contracts are utterly void for all purposes, and a court of competent jurisdiction in a proper action is given authority to enjoin either the collection thereof or any proceeding which may be brought to enforce such a contract, and the court may direct the original of such a contract to be made void; and it is provided in the statute itself that the payment of the principal sum or the interest, or any part thereof, shall not be required as a condition to granting the remedies last mentioned, as is done in some of the States where the law is less rigorous.

Usury statutes in many of the States forfeit only the interest or the excess of interest over the legal rate, making this forfeiture in the nature of a penalty, so that such contracts are not held by the courts to be utterly void, but only to be voidable, when proper action is taken to make them so on the part of the borrower, or the person who has agreed

to pay the usurious interest. This has caused a variety of decisions on the question involved in the different States, varying with the terms of their several statutes, and in reference to such laws the Supreme Court of the United States, in the case of *Fleckner* v. *United States Bank,* 21 U. S., 355, says:

"The statutes of usury of the States, as well as of England, contain an express provision, that usurious contracts shall be utterly void; and without such an enactment, the contract would be valid, at least, in respect to persons who were strangers to the usury."

This proposition contains a negative pregnant meaning that where such enactments exist, making such contracts void, as in Porto Rico, the contract is utterly void, as to all persons. The Supreme Court of the United States seventy-five years later announced the proposition that:

"When a State thinks that the evils of usury are best prevented by making usurious contracts void, and by giving a right to the borrowers to have such contracts unconditionally nullified and canceled by the courts, as in this case, such a view of public policy, in respect to contracts made within the State and sought to be enforced therein, is obligatory on the Federal courts, whether acting in equity, or at law; and the local law, consisting of the applicable statutes, as construed by the Supreme Court of the State, furnishes the rule of decision." (*Missouri, Kansas & Texas Trust Co.* v. *Krumseig,* 172 U. S., 351.)

There can be no doubt whatever that Porto Rico is one of those Governments which take the view suggested by the Supreme Court in the paragraph last cited, and that the legislature of this Island intended that usurious contracts, when they were found to be so, should be considered in our courts as utterly void as to all persons and for all purposes; and so being this fact can be taken advantage of, and set up in any sort of proper pleading, by any person who has any interest in the subject matter, whether he may have been a party to the original contract or not.

There exists in the mind of some persons, members of the bar and others, a prejudice against usury laws, and they consider that such laws when they declare a usurious contract void are too severe and harsh, and should be evaded if possible. Such is not the opinion entertained by this court, but we agree, in our estimate of the justice and policy of usury laws, with that eminent lawyer, textwriter and judge, who wrote the opinion in the case of *Dunham* v. *Gould,* nearly ninety years ago. To express our views in regard to the history of such laws as this we cannot do better than to quote from that case wherein in referring to this subject, Chancellor Kent, in the year 1819, in a very able opinion, makes use of the following concise and pertinent language:

"If we look back upon history we shall find that there is scarcely any people, ancient or modern, that have not had usury laws. I believe there is not a nation in Europe at this day without them. In ancient Rome (according to Tacitus Ann. lib. 6, ch. 16), usury was discouraged in the early period of the Republic by the twelve tables, which reduced interest to 1 per cent. It was afterwards lowered to one-half per cent, and finally abolished by the clamors of the people. It was revived in the ages of commerce and luxury, but placed under necessary restrictions. Four or 6 per cent was the ordinary interest; 8 per cent was allowed for the convenience of commerce, and 12 per cent might be taken for maritime hazards, by the laws of Justinian; but the practice of more exorbitant interest was severely restrained. The Romans, through the greater part of their history, had the deepest abhorrence of usury. They did not derive their objections to usury from the prohibitions in the Mosaic Law, nor did they hold it sinful, as the learned fathers of the early and middle ages of the church have done; for they knew nothing of that law. The Roman lawgivers and jurists acted from views of public policy. They found by their own experience, that unlimited usury led to unlimited oppression, and that the extortion of the creditor and the resistance of the debtor was constantly agitating and disturbing the public peace. But it is not only the civilized and commercial nations of modern Europe and the sage lawgivers of ancient Rome, that have regulated the interest of money. It will be deemed a little singular that the same voice against usury should have been raised in the laws of China,

in the Hindoo institutes of Kenu, in the Koran of Mahomet, and, perhaps we may say, in the laws of all nations that we know of, whether Greek or barbarian." (*Dunham* v. *Gould,* 8 Am. Dec., 325 and 326.)

It will be seen as heretofore stated, that a contract is tainted with usury, when thereon or thereby, directly or indirectly, there is reserved or accepted or secured or agreed to be reserved or accepted or secured any greater rate of interest than 12 per cent, and such usurious contract is "utterly void for all purposes." This court has construed this statute in the case of *Ignacio Arturo Iglesias et al.* v. *Riera Hermanos,* by a judgment rendered and an opinion given on the 27th of March, 1905. The pertinent paragraphs of that opinion read as follows:

"It appears that upon the promissory note sued upon no rate of interest is stipulated, but afterwards a letter was written by the defendant to the plaintiff acknowledging himself to be bound to pay interest at the rate of 3 per cent per month, it being proven that he had paid interest at that rate up to the 20th of February, 1904. It seems clear from the reading of the act referred to and quoted above that it is not necessary that the usurious interest should be specified, in the document, note or contract, but that any person who demands or receives directly or indirectly, money or goods at a greater rate of interest than 12 per cent per annum, violates the law, and that any contract whereby or whereon there is reserved or accepted or secured directly or indirectly any greater rate of interest than 12 per cent per annum is utterly void for all purposes.

"It seems to us that a statute which is couched in such plain and intelligible words as the one in regard to usury in Porto Rico needs no construction. It is clearly the intent of the legislature that the rate of interest in this Island shall be limited to 12 per cent annually and that all contracts stipulating a greater rate or on which a greater rate is received, are thereby rendered void for a violation of the law.

"The proof in this case being plain that 3 per cent monthly interest was paid and received, the contract or promissory note, upon which such illegal payment of interest was made, was thereby rendered null and void, and no suit can be maintained thereon."

Taking the usury law as enacted by the Legislature of

Porto Rico, and as construed by this court, and as it must be understood on fair interpretation, it will be seen that the view taken by the defendants of this statute and of the pleadings and proof required in regard thereto, is altogether erroneous, and that the answer, inasmuch as it fails to specifically deny the usury as alleged in the complaint, or to set up any new matter constituting a defense, is insufficient, and that the demurrer should have been sustained. This error on the part of the trial court is alone sufficient to require us to reverse the judgment; but we will consider the other five errors which are assigned in their regular order.

II. The second error is that the court erred in overruling the plaintiffs' motion for a judgment on the pleadings. The defendant contends that such a motion is unknown to our statute, and that the only thing analogous thereto is provided for in the Code of Civil Procedure in section 358, which corresponds to section 1138 of the Code of Civil Procedure of California, and he cites chapter 93, Estee's Pleadings, which treats of the matter of "submitting controversies without action" as the only thing analogous to be found in the law. The "judgment on failure to answer," as provided for in section 194 of the Porto Rican Code of Civil Procedure is much more analogous, if analogies are to be sought for in our Codes, to this proceeding. It is true that the Code of Civil Procedure does not specifically provide for a motion for a judgment on the pleadings, inasmuch as by section 132 it is stated that every material allegation of the complaint, not controverted by the answer, must for the purposes of the action, be taken as true; then it naturally follows that if the answer does not controvert the material allegations of the complaint, and they are taken as true, without the necessity of introducing proof to establish the same, that a judgment may be rendered on the pleadings. And it is also provided in the Code of Civil Procedure, section 315, that every application for an order is deemed a motion, and consequently a judgment on the pleadings may be rendered, on motion of the plaintiff, when the material

allegations of the complaint, which is sufficient in itself and verified by oath, are not denied specifically by the answer, and no new matter is set up constituting a defense. In this respect our Code of Civil Procedure is similar to that of California, in which State judgments on the pleadings are continually and consistently recognized, and have often been rendered. Compare section 132 of the Code of Civil Procedure of Porto Rico with section 462 of California. See the following decisions of the Supreme Court of California: *Gay* v. *Winter,* 34 Cal., 153; *Fitzgibbon* v. *Calvert,* 39 Cal., 261; *Felch* v. *Beaudry,* 40 Cal., 439; *Homme* v. *Hays,* 55 Cal., 337; *Kelley* v. *Krises,* 68 Cal., 210; *Loveland* v. *Garner,* 74 Cal., 298; *Gardner* v. *Donneley,* 86 Cal., 367; *Drew* v. *Pedlar,* 87 Id., 443; *De Toro* v. *Robinson,* 91 Id., 371; *Fitzgerald* v. *Neustadt,* 91 Id., 600; *San Francisco* v. *Staude,* 92 Id., 560; *Heydenfeldt* v. *Jacobs,* 107 Id., 373.

The same practice prevails in the States of Montana and Idaho, whose statutes are similar to ours, as is shown in the following cases, decided by the Supreme Courts in those States: *Lamme* v. *Kintzing,* 1 Mont., 290; *Sands* v. *Maclay,* 2 Mont., 35; *McDonald* v. *Pincus,* 13 Mont., 83; *Johnson* v. *Manning,* 3 Idaho, 352.

The new matter of defense afforded by a pawnbroker's license has been already discussed and found insufficient.

Inasmuch then as the amended answer is insufficient, as we have heretofore stated, under the first assignment of error, the motion made by the plaintiffs for a judgment on the pleadings, could have been granted by the trial court and the judgment rendered in favor of the plaintiff, canceling the mortgage.

But it is decided in the case of *Fitzgerald* v. *Neustadt* by the Supreme Court of California that motions for judgments on the pleadings may be allowed or refused in the discretion of the court; and it is also decided by the same court, in other cases, that vagueness is not alone sufficient to justify such a judgment, and the matter being discretional in the

trial court, the appellate court will not reverse the action of the trial court, in refusing to render a judgment on the pleadings, unless there is shown a gross abuse of the discretion allowed, but such action will be sustained. This being the trend of authority in California, and there being in this Island, as in that State, no statute law directly and positively providing for such a proceeding as a judgment on the pleadings, we cannot find in this case the existence of such a gross abuse of judicial discretion as would justify us in reversing the ruling made below in the denial of such a motion, and for that reason decline to modify the order of the court denying the motion made by plaintiffs in this regard. (*Fitzgerald* v. *Neustadt*, 91 Cal., 602.)

III. Appellants in their third assignment of error allege "that the court erred in refusing to allow plaintiffs to file a formal motion for a continuance, in writing, supported by affidavit and in refusing to allow plaintiffs a continuance, and forcing them into a trial when they were wholly unprepared." The trial court certainly should have permitted the plaintiffs to make their application for a continuance in writing, and support the same by a proper affidavit, and a reasonable time should have been granted them to prepare such an application and affidavit supporting the same. But the failure to do so does not appear to have prejudiced their rights in this case, and under section 142, of the Code of Civil Procedure, this court must disregard this error in the proceedings, because it does not affect the substantial rights of the parties, and the judgment cannot be reversed or affected by reason of such error. Let us see why the plaintiffs were not prejudiced by this action of the court below. Even if the plaintiffs had been permitted to present their application for a continuance, supported by affidavits made by their counsel, Chase Ulman, Esq., and by the interpreter, Juan A. Monagas, and which appear in the record in support of the motion for a new trial, the application must have been overruled, because no sufficient diligence would have appeared from the

record to have been exercised by the plaintiffs to procure the testimony of the witness Gaudier. The affidavit referred to shows that the witness was out of the district, and of course the subpoena issued for him and placed in the hands of the marshal could not have been served. It is provided by section 114 of the law of evidence that no witness can be compelled to appear before a tribunal outside of the district in which he resides, unless the distance from the place of his residence to the place of the trial is less than 30 miles. (Laws of 1905, pp. 92 and 93.) The distance between the two places does not appear from the affidavit, but it is alleged by the respondent that the witness was at Yauco, beyond the district, and 30 miles from the town of Mayagüez. This court judicially knows these geographical facts including distances and the boundaries of the judicial districts in this Island. (Sec. 36 of the Law of Evidence; Laws of 1905, p. 76, sec. 36, paragraphs 2 and 8.) And, moreover, this case was set for trial on the 22d of December, 1905. This was the third and last call of the docket for the term, and the setting means that it was set for a final decision at that time, and not merely for a hearing and decision on the motion made for judgment on the pleadings. This motion should have been heard and determined at the second calling of the docket, or if not then, at some other time to have been fixed by the court, which could have been done on the motion of either party, at any time before the day of trial. The case having been set for final trial should have been disposed of under the statutes and the rules of the court, and to apply for a subpoena on that day or on the day previous, for a witness who was absent from the city and the district, and more than 30 miles from the place of trial, was not due diligence in the efforts required to obtain his appearance, and it would not have been error in the court to overrule the motion for a continuance, had the same been made as proposed and supported by the affidavit presented in the record. For these

reasons, this assignment of error is not well taken, notwithstanding the ruling of the court in the premises may have been somewhat arbitrary; and it must be held that such proceeding did not prejudice the rights of the appellants.

IV. In the fourth paragraph of their assignment of error the appellants contend that the judgment of the court should be reversed for want of evidence to sustain it because the evidence expressly shows that the loans for which the mortgages were executed were made at a higher rate of interest than 1 per cent per month, and that the material facts, alleged in the complaint showing usury and out of which the usurious contracts arise, are not denied in the answer, and therefore, under the statute, deemed admitted without the necessity of producing proof.

A careful inspection of the record shows that this assignment should be sustained. The defendant offered no evidence whatever on the trial of the case. The plaintiffs introduced the evidence of Texidor, one of their number, to show that the loan made to him and his wife was at the rate of 2½ per cent per month, and that they borrowed from the defendant $740, for which they executed the two mortgages aggregating $1,340. In other words, the evidence of the plaintiff Texidor fully sustains all the material allegations in regard to the usurious interest, and was sufficient to support a judgment in favor of the plaintiffs, canceling the mortgages. No effort was made to impeach this witness or to cast any cloud upon his credibility, and his testimony must be accepted. (See section 4 of the Porto Rican Law of Evidence.) The defendant, although personally present in court, did not testify, nor deny the facts stated in the verified complaint and in the evidence of the plaintiff. And as we have heretofore seen, in the discussion of the second assignment of error, the material facts alleged in the complaint and duly sworn to were not specifically denied in the answer, and therefore they should be deemed to be admitted without the necessity of proof. Then, whether we consider the evidence

introduced in the record, the plaintiff was entitled to a judgment in his favor and the defendant was not. The court rendered a judgment in favor of the party who had presented neither pleadings nor evidence to support it; and this requires a reversal.

V. The fifth assignment of error alleges that the court erred at the trial of the said case in refusing to allow the witness Benito Texidor, at the request of the other plaintiffs, to refresh his memory from a memorandum made by him, showing the exact amounts received by him from defendant and the interest charged, accepted and received on said loans. This ruling of the court was plainly a violation of one of the most elementary rules of evidence. Any witness has a right to refresh his money when testifying in a case, from a memorandum made by himself in regard to the subject matter of his testimony. (Sec. 154, Law of Evidence; see Law of 1905, p. 100.) If the memorandum, as is contended by the respondent, contained the answers which the witness should have given to the several questions propounded to him, the court had a right, at the request of counsel, to examine the memorandum, and if satisfied that it was improperly prepared, and copied by the witness, and was not in truth and in fact a genuine memorandum made by himself at the proper time to refresh his memory, it could have been then and there excluded; but no such action was taken. In the absence of anything to show the contrary the memorandum is presumed to have consisted merely of manuscript notes made by the witness himself at the proper time for the purpose of refreshing his memory as to the amounts received on the mortgages and the amount from time to time paid him, or other pertinent points, and for this reason could clearly have been used, without any violation of law or of propriety in refreshing the memory of the witness. This ruling of the court might, by depriving the witness of his notes, have rendered his testimony somewhat confused. As appears from the record, he did not at first on some points exactly remember all

the particulars, and this may have resulted from a lack of the privilege of using the memorandum which he had made in regard to the dates and amounts. The action of the court in this regard was an infringement of the law of evidence and must be regarded as a material error.

VI. The sixth assignment of error alleges "that the court erred in overruling the motion for a new trial." The motion for a new trial is explicit and sets out various reasons why it should have been granted, but all of them, or nearly all of them, have been discussed under the foregoing sections.

As Mr. Estee remarks: "New trials are granted for the purpose of more fully securing to parties litigant complete justice." (See 3, Estee's Pleadings, sec. 4847.) A motion for a new trial is made in the court which rendered the judgment for the purpose of affording that court the opportunity, on mature reflection, of correcting any errors which might have been made in the haste of the trial.

This practice incidentally prevents the necessity of ill-advised or hasty judgments being corrected on appeal, and lessens the labors of appellate courts.

The order overruling the motion states that a motion for a new trial was filed after the petitioner had appealed from the final judgment and had perfected his appeal, and maintains that for that reason the court had no jurisdiction to entertain the motion; and this is made basis for the order overruling the same. It appears from the record that in this matter the court was mistaken as to the facts; the judgment having been rendered on the 2d of January, 1906, the motion for a new trial having been filed on the 11th day of January, 1906, within ten days after the rendition of the final judgment, the notice of appeal from the final judgment was not filed until the 27th day of the same month, still sixteen days later. It is true that the motion was not heard until the 12th of February, 1906, but this delay does not take away from the trial court the jurisdiction to hear and determine the motion for a new trial. When the motion for new trial

is presented and filed, in the trial court within ten days after the rendition of the judgment, the subsequent perfection of the appeal, by taking the necessary statutory steps within the time prescribed does not take from the court jurisdiction to hear and determine the motion for new trial.   Should the same be granted the appeal falls to the ground; but should it be overruled the transcript is made and forwarded to the appellate court in due course for review.   This is, as far as known, the universal practice in the State courts on the Continent.   This view has been fully adopted by this court in an opinion lately written by Mr. Justice Hernández in the case of *Altuna* v. *Ortiz,* decided on the 14th day of the present month, which is approved.   (See case of *Naglee* v. *Spencer,* 60 Cal., 10; see also the case of *Carpenter* v. *Wilson,* 25 Cal., 166; *Rayner* v. *Jones,* 90 Cal., 78; Code of Civil Procedure of Porto Rico, sec. 297; Code of Civil Procedure of California, sec. 937.)   The motion for a new trial should have been granted in correction of the errors set forth by the plaintiffs in the first, fourth and fifth assignments of error. (Sec. 221, Code of Civil Procedure.)

It is suggested incidentally in the brief of counsel for appellee, that Horton & Cornwell cannot acquire the lands subject to the mortgages and then maintain a suit to set them aside.   At first sight there may appear to be some reason in this view.   But let us resort to the record of the cause.   Horton & Cornwell are not the only, nor even the principal, plaintiffs and appellants in this case.   Benito Texidor and his wife, Elvira Pulido, who were the borrowers of the money and the makers of the mortgages, are also plaintiffs and appellants.   Texidor, the husband, without the concurrence of the wife, Mrs. Pulido, sold a portion of the lands to Horton & Cornwell, subject to the mortgages.   This conveyance had no effect on the rights of Mrs. Pulido, who was the owner of at least an interest in the lands, as she did not join therein as the statute requires.   (See Civil Code, sec. 1328.)   Then no matter whether the appellants, Horton & Cornwell, could

maintain this suit or not, the other plaintiffs certainly could, and Mrs. Pulido especially had the right to sue for the cancellation of the mortgages in the court below, and, on failing to recover judgment there, to bring the case to this court on appeal. But there can be no doubt of the rights of all the appellants to raise the questions presented here, when we consider the very broad language of our statute in regard to usury hereinbefore quoted. In that statute usurious contracts are declared "void for all purposes." And the courts are authorized "to direct that the original of such contracts be made void," without the necessity of repayment of the principal sum borrowed, or the interest or any part thereof. This language is certainly broad enough, under the decisions of the American courts, to permit the subsequent purchaser to maintain a suit to remove any cloud upon his title by declaring void the usurious mortgage, which the statute denounces as "void for all purposes." (*Ford* v. *Washington Nat. Bldg. Ass'n.,* 10 Idaho, 35; *Lyon* v. *Welsh,* 20 Iowa, 579; *Fleckner* v. *Bank of U. S.,* 21 U. S., 354; *Lloyd* v. *Scott,* 29 U. S., 117; *Garvin* v. *Linton,* 62 Ark., 370; *M. K. & T. T. Co.* v. *Krunsek,* 172 U. S., 351 to 361; *Miller* v. *Ammon,* 145 U. S., 421.)

Of the foregoing decisions it is not necessary to make extracts from more than one, of which the following is selected as indicating their scope. The Supreme Court of the United States, in the year 1830, through Mr. Justice McLean, discussed this point as follows:

"At this point in the case, an important question is raised, whether Lloyd, the plaintiff in the replevin, being the assignee of Scholfield, can set up this plea of usury in his defense. It is strongly contended that he cannot. He purchased this property, it is alleged, subject to the annuity, and paid for it proportionably less consideration. That knowing of the charge before he made the purchase, it would be unjust for him now to evade the payment. And the inquiry is made, whether Lloyd could plead usury in this contract, if the annuity had been purchased by Scholfield? He would be estopped

from doing so, it is urged, by the obligations of his own contract, as he is now estopped from resisting the claim of Moore. As to the injustice of the defense, it may be remarked, that the objection would apply with still greater force against Scholfield, if he were to attempt, by a similar defense, to evade the payment of the annuity. He received the money after assenting to the contracts; but he is at liberty to evade the payment of the annuity by plea of usury. Is the position correctly taken that no person can avail himself of this plea, but a party to the original contract? The principle seems to be settled, that usurious securities are not only void as between the original parties, but the illegality of their inception affects them even in the hands of third persons who are entire strangers to the transaction. (Comyn on Usury, 169.) A stranger must 'take heed to his assurance, as his peril;' and cannot insist on his ignorance of the contract, in support of his claim to recover upon a security which originated in usury.''

The court then proceeds to discuss the various decisions sustaining this view of the case, and continues:

''If usury may be shown in the inception of a bill, to defeat a recovery by an indorsee, who paid for it a valuable consideration, without notice of the usury, may not the same defense be set up, where, in a case like the present, the party to the usurious contracts claims, by virtue of its provisions, a summary mode of redress? The court entertain no doubt on this subject. They think a case of usury is made out by the facts stated in the second plea, and that Lloyd may avail himself of such a defense.'' (*Lloyd* v. *Scott*, 20 U. S., 226, 228, 230.)

But this point of want of capacity in the plaintiffs to sue is not made in the pleadings nor in the assignment of errors, on which the case was heard in this court. We cannot go outside of the record to befog with doubts the legal questions properly presented here. We have to consider cases in this court, like they are tried in the courts below, on the issues made by the pleadings. That is the only way in which issues can be made; and this court, like all others, must be content to follow the track marked out in the record; unless a want of jurisdiction is apparent therein. Then we must hold that

all of the plaintiffs had a legal standing in the court below and that the appellants are properly before this court.

Any other matters which are noticed in the briefs or appear in the record are not stated in the assignment of errors, and require no attention here, as that assignment is made the basis of the plaintiffs' appeal, and is accepted as such by the defendant in his brief and argument made before this court.

It has been suggested that the proper course on the reversal of the judgment rendered by the court below might be to remand the case for a new trial. The statute does not permit this. An amendment to section 306 of the Code of Civil Procedure reads as follows:

"Section 306.—When the judgment, order or decree of the court below shall be reversed, the court shall proceed to render such judgment, order or decree as the court below should have rendered except when it is necessary that some matters of fact be ascertained, or the damage to be assessed or the matter to be decreed is uncertain, in any of which cases the cause shall be remanded for a new trial in the court below." (Laws of 1906, p. 164.)

In the present case all the facts are ascertained and were presented to the trial court. There are no damages to be assessed, certain or uncertain. The matter to be decreed is simply the nullity of the mortgages passed between the parties; so there is no reason to remand the case and this court should proceed to render judgment.

For the errors noticed and discussed at some length herein a judgment should be here rendered in favor of the plaintiffs setting aside the mortgages mentioned in the complaint, and declaring them null and void on account of the usurious interest which was therein reserved, and paid and accepted on the loans secured thereby. The costs both of this court and the court below should be adjudged against the defendant.

*Accordingly decided.*

Chief Justice Quiñones and Justices Hernández and Figueras concurred.

Mr. Justice Wolf also concurred, and filed a separate opinion in which he set forth the reasons therefor.

### CONCURRENT OPINION DELIVERED BY MR. JUSTICE WOLF.

I am in accord with the main conclusion of the court, namely that the judgment ought to be reversed and I desire to state the reasons for my concurring opinion. It seems clear to me from the words of the complaint, namely:

"That on the 13th of June, 1905, the said Benito Texidor transferred and sold for a good and valuable consideration all his rights, title and interest in the mortgage property aforesaid, to the plaintiffs, Benjamin J. Horton and Frederick L. Cornwell, the last two named being now the owners *in fee* of the aforesaid mortgaged property;"

that the complainants, Benito Texidor and Elvira Pulido, his wife, have parted with all title in the property, and that they were unnecessary parties.

However, as pointed out in the opinion of the court, no objection on this ground was made in the court below, and the fact of Mrs. Pulido and her husband being made parties can work the defendant no harm. At the hearing in this court and in the briefs of the parties it was assumed that the parties essentially interested were the complainants, Horton and Cornwell. The question then arises, can such complainants recover? The evidence taken at the trial shows that they acquired the property agreeing to pay the debts of the complainant Texidor. Under these circumstances the general current of American authorities is to the effect that the purchaser of an equity redemption cannot set up usury in the mortgage. (See case of *Matthews* v. *Ormerd,* 140 Cal., 578, and cases cited on page 581.)

However, the decision of the Supreme Court in the case of *Lloyd* v. *Scott,* cited in the opinion of the court herein, never having been reversed would be an authority for us.

Furthermore, the construction put upon similar interest statutes in the States which prevents the alienee of property from setting up usury is dependent upon certain principles of equity which have never been applied in Porto Rico, and the application of which, in the face of the special statute, has not been confided to the courts of Porto Rico. The policy of the law having been determined by the legislature, the interpretation of the statute is as contended for in the opinion of the court, and in accordance with the principles laid down in the first chapter of the Civil Code.

I do not agree with the court in regard to several matters of evidence. But for the question of usury I do not think the consideration of the contract could have been inquired into. Furthermore the court below, in my opinion, did not err in refusing to allow Texidor to use the memorandum made by him. No proper foundation was laid for the reading of the memorandum. However, although these questions were both decided against the plaintiffs below, there is enough in the record to show the usurious character of the contract, and the judgment should have been reversed and entered in favor of the appellants.